22

FILED

FEB 29 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                                      Case No. 05-62634-A-7

ELIZABETH RODRIGUES MENDEZ,

               Debtor.
_____/                          Adv. No. 06-1111

JAMES E. SALVEN, Chapter 7 Trustee,

               Plaintiff,

     vs.                                                 FINDINGS OF FACT AND
                                                           CONCLUSIONS OF LAW
MISHELLEENA E. MENDEZ,

               Defendant.
_____/

      Trial of this adversary proceeding was held November 2, 2007.  Following the trial, defendant Mishelleena E. Mendez (the "Defendant") requested time to obtain a transcript, and thus, the court set December 14, 2007, as the deadline for filing post-trial briefs.  No transcript was requested by the Defendant, and only the plaintiff James E. Salven (the "Trustee" or the "Plaintiff") filed a post-trial brief.

      At trial, the Plaintiff testified both as a percipient witness and as an expert.  Additionally, portions of the deposition transcript of the deposition of the debtor Elizabeth R. Mendez (the "Debtor") taken June 20, 2007 (the "Elizabeth Mendez Deposition") and of the June 20, 2007 deposition of the Defendant Mishelleena E. Mendez (the "Mishelleena Mendez Deposition") were admitted.  Portions of the transcript from the Debtor's meeting of creditors conducted under 11 U.S.C. § 341 (the "§ 341 Transcript") were also admitted.  Further documents were admitted as reflected on the minutes.

47

1   The main bankruptcy case, In re Mendez, No. 05-62634, was filed by the Debtor under

2   chapter 7 of the Bankruptcy Code in this court on October 17, 2005. This adversary proceeding,

3   Salven v. Mendez, No. 06-01111, was filed by the Plaintiff in his capacity as the appointed

4   chapter 7 trustee on March 17, 2006. This court has jurisdiction over the adversary proceeding

5   pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding within the meaning of 28

6   U.S.C. § 157(b)(2)(H). This memorandum contains findings of fact and conclusions of law

7   required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52.

8

9                                          FACTS

10   Elizabeth Rodrigues Mendez filed her chapter 7 petition on October 17, 2005, and James

11   E. Salven was appointed the chapter 7 trustee.

12   On October 26, 2005, the Debtor filed Schedule A, showing that she owned real property

13   located at 5688 West Athens in Fresno, California (the "Residence") and that the nature of her

14   interest was as owner. After the Trustee filed an objection to the Debtor's claim of exemption,

15   the Debtor filed a motion to dismiss her chapter 7 case. The Debtor asserted that she had not

16   intended to file the case and that the nature of the bankruptcy proceeding had been

17   misrepresented to her by the person claiming to be an attorney who filed the petition on her

18   behalf.

19   The court denied the Debtor's motion to dismiss without prejudice on procedural grounds

20   by order dated March 15, 2006. The Debtor then retained counsel and filed a new motion to

21   dismiss which she set for hearing May 17, 2006. The grounds for the second motion to dismiss

22   were the same as the first motion but also included an assertion that as the Debtor had not

23   obtained pre-petition credit counseling, she was not eligible to be a debtor under chapter 7 and

24   thus the court was required to dismiss the case. See 11 U.S.C. § 109(h)(1). On July 17, 2006,

25   the court entered Findings of Fact and Conclusions of Law regarding the Debtor's motion to

26   dismiss. Pursuant to those Findings of Fact and Conclusions of Law, the court denied the

27   Debtor's motion to dismiss her case. The Debtor appealed, and the court's ruling denying the

28   motion to dismiss was affirmed by the Ninth Circuit Bankruptcy Appellate Panel in May 2007.

                                          2

1    See Mendez v. Salven (In re Mendez), 367 B.R. 109 (B.A.P. 9th Cir. 2007).

2    After concluding that there were assets in the bankruptcy estate to distribute to creditors,

3    the Trustee filed claims on behalf of the creditors scheduled by the Debtor, using the names and

4    addresses in the Debtor's schedules.   The Trustee retained counsel and timely filed, on March

5    17, 2006, the complaint initiating this adversary proceeding.  The complaint seeks to avoid an

6    asserted fraudulent transfer.  The complaint seeks relief under California Civil Code §§ 3439.04

7    and 3439.05.  In the complaint, the Plaintiff alleges that from approximately 1995 until April 21,

8    2003, the Debtor owned 100% of the Residence.  On April 21, 2003, the Debtor transferred an

9    undivided one-half interest in the Residence to the Defendant.  The complaint alleges that the

10    Debtor received no consideration or reasonably equivalent value in exchange for the transfer of

11    the one-half interest in the Residence.  The complaint further alleges that the Debtor was

12    insolvent on the date the transfer was made, became insolvent as a result of the transfer, or

13    intended to incur or believed or reasonably should have believed that she would incur debts

14    beyond her ability to pay as they became due.

15    The complaint also alleges that at the time of the transfer, creditors of the Debtor had

16    claims against her.  The complaint further alleges that creditors of the Debtor had claims which

17    arose after the transfer.

18    The Trustee asserts that at the time of the transfer of the one-half interest in the Residence

19    to the Defendant, the value of the Residence was at least $450,000.00.  As a second and separate

20    claim for relief, the Trustee asserts that the transfer was made by the Debtor with the actual intent

21    to hinder, delay, or defraud creditors of the Debtor.  The complaint asks for avoidance of the

22    transfer and return to the Trustee of the one-half interest in the Residence.

23    Through counsel, the Debtor filed an answer to the complaint, generally denying the

24    allegations in the complaint.

25    With the consent of the parties, the court deferred trial in the adversary proceeding until

26    after the decision of the Bankruptcy Appellate Panel on the appeal of the debtor's motion to

27    dismiss.  At a status conference in the adversary proceeding on August 1, 2007, the Plaintiff

28    appeared through counsel, and the Defendant appeared through her trial attorney, Richard Lima.

3

At that status conference, trial was scheduled for November 2, 2007, at 9:00 a.m. The Notice of and Order for Trial required lists of witnesses, any written evidentiary objections, and all documents and other items of evidence to be exchanged with opposing counsel and filed or submitted to the court no later than October 26, 2007. The Plaintiff timely filed a witness list on October 26, 2007. The Defendant filed a witness list on October 29, 2007. The Plaintiff's witness list included the Trustee, the Debtor, and the Defendant. The Plaintiff's witness list also included a Gregg Palmer, who ultimately was not called by the Plaintiff. The Defendant's witness list included the Defendant and the Debtor.

At trial, only the Plaintiff appeared as a witness. The Plaintiff made an offer of proof that the Plaintiff had attempted to serve a subpoena for appearance at trial on the Debtor and on the Defendant. The court accepted that offer of proof. The process server's "Non-Service Report" showed that the process server attempted service three times on the Debtor and three times on the Defendant.

The Plaintiff has been a certified public accountant for thirty years and has been a bankruptcy trustee for numerous years. He testified that in his opinion, the Debtor was insolvent on the date she transferred an interest in the Residence to the Defendant. Alternately, he testified that the Debtor became insolvent as a result of the transfer. In support of this opinion, the Plaintiff referred to the Debtor's Schedule F, which shows the date that each particular claim was incurred. The Plaintiff testified that adding up the debts incurred prior to 2003 (the date of the transfer), it became clear that the Debtor became insolvent as a result of the transfer.

The Plaintiff also relied on the Debtor's Schedules of Assets and Liabilities and on her Schedules of Income and Expenses, and on the fact that her income was so low she was not required to file tax returns in concluding that she was insolvent in April 2003. He made an assumption that no significant change in her income had occurred between the date of the bankruptcy filing and the date of the transfer. In addition, he relied on testimony by the Debtor. In analyzing her solvency or insolvency at the date of the transfer, the Plaintiff utilized debts that had been incurred prior to the date of the transfer, but he did not consider the statute of limitations in his analysis. In other words, the Debtor's schedules showed certain debts incurred

4

in 1996. The Plaintiff did not analyze whether those debts would be collectible in 2003. Further, the Plaintiff did not consider evidence of when the Debtor made her last payment on the debts listed in the schedules. He did look at the Statement of Financial Affairs that showed no lawsuits pending and no payments within the ninety days of filing the Bankruptcy case. The Plaintiff did not have any information about when the last payments on the debts were made. The Plaintiff acknowledged that it was possible that the amounts owed as shown on Schedule F were not the same as the amounts owed in 2003.

The Plaintiff assumed that as of 2003 the Debtor owned her house, her car, and the other assets listed in her bankruptcy petition. The Plaintiff determined that the Debtor was still married when she filed her chapter 7 case. The fact that the Debtor's husband may have been or was also liable on the debts listed in the petition did not change the Plaintiff's analysis because he assumed that community liability is joint and several. Based on the Schedules of Assets and the Debtor's testimony at her deposition, the Plaintiff did not believe she had any claim to any assets of her husband. At her deposition, the Debtor had testified that she was unemployed and disabled and on disability. In 2003, at the time of the transfer, she was taking care of foster children. The Plaintiff relied on the Debtor's testimony to determine her expenses at the date of the transfer.

The Defendant did not pay any money as a down payment on the house. The source of the down payment on the Residence was the savings of the Debtor and her husband, from whom she is separated but still legally married. When she was deposed, the Defendant did not know her ownership percentage in the Residence. The Debtor believed she made one-half of the mortgage payments each month. The Defendant testified that she paid the Debtor $450.00 per month toward the mortgage payments from the time the Residence was purchased, and her share of the payments increased to $550.00 per month for the last two or three years. See Mishelleena Mendez deposition at 9:10 - 9:25. These payments were made out of her bank account by ATM withdrawals. Id. The Defendant testified that she did not pay anything on the date the Debtor transferred the one-half interest. See Mishelleena Mendez at deposition 18:15 - 19:4. The Plaintiff alleges the monthly payments were rent payments because according to the Debtor's

1    deposition, the Defendant is required to use part of her monthly disability check for shelter.

2

3                                    STANDING

4            The Trustee has standing to bring this adversary proceeding to avoid the Debtor's transfer

5    of a one-half interest in her residence to the Defendant under 11 U.S.C. § 544(b), which gives

6    bankruptcy trustees the rights of actual unsecured creditors under applicable law to void

7    transfers.  Section 544(b) provides, in pertinent part, that the trustee may avoid any transfer of an

8    interest of the debtor in property that is voidable under applicable law by a creditor holding an

9    allowable unsecured claim.  11 U.S.C. § 544(b).  Thus, a trustee's powers under § 544(b) are

10   limited to those of unsecured creditors.  Here, California's codification of the Uniform Fraudulent

11   Transfer Act ("UFTA"; Cal. Civ. Code §§ 3439.01 - 3439.12) is the relevant § 544(b) "applicable

12   law" that the Debtor's unsecured creditors could invoke in the absence of bankruptcy to have

13   fraudulent transfers set aside.  See Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 232

14   (B.A.P. 9th Cir. 2007) (in action to avoid transfer from debtor to his former spouse of nonexempt

15   funds through the marital settlement agreement, the chapter 7 trustee stood in the shoes of the

16   debtor's judgment creditors, who could personally invoke UFTA).  That a bankruptcy trustee may

17   pursue a fraudulent transfer action under state law pursuant to § 544(b) is a well-established

18   concept.  See e.g., Gen. Elec. Cap. Auto Lease, Inc. v. Broach (In re Lucas Dallas), 185 B.R. 801,

19   804 (B.A.P. 9th Cir. 1995) ("The trustee is authorized to prosecute state law fraudulent transfer

20   actions under section 544(b)"); Sherwood Partners, Inc. v. Lycos, Inc., 394 F.3d 1198, 1201 (9th

21   Cir. 2005) (citing § 544(b) as an example of federal law coexisting peaceably with state laws

22   regulating the rights and obligations of debtors and trustees because it makes state law on

23   voidable transfers available to the bankruptcy trustee); Decker v. Advantage Fund Ltd., 362 F.3d

24   593, 596 (9th Cir. 2004) (stating that the trustee's powers under § 544(b)(1) specifically include

25   avoiding fraudulent transfers under California's fraudulent transfer law).

26   However, standing under § 544(b) is a two-part inquiry.  Section 546 imposes limitations on the

27   trustee's avoiding powers in § 544.  11 U.S.C. § 546.  In particular, § 546(a) provides the statute

28   of limitations for actions under § 544.  Section 546(a) states that an action under § 544 may not

                                           6

1    be commenced after the earlier of:

2                    (1) the later of -
                        (A) 2 years after the entry of the order for relief; or
3                    (B) 1 year after the appointment or election of the first trustee
                        under section 702 . . . of this title if such appointment or such
4                    election occurs before the expiration of the period specified in
                        subparagraph (A); or
5                    (2) the time the case is closed or dismissed.

6    11 U.S.C. § 546(a).

7        Here, the Debtor in the main bankruptcy case was discharged on May 15, 2007.

8    However, the case has not been closed, which renders the statute of limitations provision of §

9    546(a)(2) inapplicable.  As a result, this court must look to whether the instant adversary

10    proceeding falls within the statute of limitations period as provided in § 546(a)(1).  Section

11    546(a)(1) states that an action under § 544 may not be commenced after the later of two years

12    after the entry of the order for relief, or one year after the appointment of the first trustee if such

13    appointment occurs before the expiration of the two year period after the entry of the order for

14    relief.

15        In voluntary cases, the filing of a voluntary bankruptcy petition constitutes an order for

16    relief.  11 U.S.C. § 301(b).  The Debtor filed a voluntary petition under chapter 7 on October 17,

17    2005.  Therefore, under § 546(a)(1)(A), "2 years after the entry of the order for relief" would set

18    a time bar of October 17, 2007 for adversary proceedings under § 544.  However, § 546(a)(1)

19    looks to the later of two events.  The second event is one year after the appointment of the first

20    trustee, if this appointment occurs before the two-year bar provided in § 546(a)(1)(A).  See 11

21    U.S.C. § 546(a)(1)(B).  The appointment of the first trustee means the appointment of a

22    permanent trustee at the initial § 341 meeting, and not the automatic appointment of the interim

23    trustee by the court.  This is due to the fact that the triggering date in § 546(a)(1)(B) is the

24    "appointment of a trustee under section 702," and § 702 provides that a permanent trustee may be

25    elected by the creditors at the § 341 first meeting of creditors.  11 U.S.C. § 702(b).  If the

26    creditors do not elect a trustee, the interim trustee becomes the permanent trustee.  11 U.S.C. §

27    702(d).  "There is no section 702 trustee until the section 341 meeting is held; therefore, section

28    546(a)(1) begins running only on the date of the section 341 meeting." In re Lucas Dallas, 185

7

1  B.R. at 806. In the main bankruptcy case, the Plaintiff was appointed the permanent trustee on

2  December 5, 2005 - the date of the initial § 341 meeting. Therefore, the statute of limitations

3  period under § 546(a)(1)(B) would be one year thereafter, or December 5, 2006.

4      As between the § 546(a)(1)(A) time bar (October 17, 2007) and the § 546(a)(1)(B) time

5  bar (December 5, 2006), the later of those two time periods is October 17, 2007 under §

6  546(a)(1)(A). Thus, the Trustee's action under § 544 must be commenced by October 17, 2007.

7  In this case, the Trustee filed the complaint on March 17, 2006. This was within the statute of

8  limitations period and therefore gives the Trustee standing to act under § 544(b).

9      However, standing under § 546 alone is insufficient for a § 544(b) action. The trustee

10  must also comply with the state statute of limitations. See 3 BANKRUPTCY LITIGATION § 17:98

11  ("The trustee must commence an action using the trustee's powers under section 544(b) within

12  the limitations period applicable under the relevant state law."). Section 3439.09 of the

13  California Civil Code provides the applicable statute of limitations with respect to fraudulent

14  transfers under state law. Under Cal. Civ. Code § 3439.09, an action under Cal. Civ. Code §

15  3439.04(1)(a) must be brought within four years after the transfer or, if later, within one year

16  after the transfer or obligation was or could reasonably have been discovered by the claimant.

17  CAL. CIV. CODE § 3439.09(a). Additionally, an action under Cal. Civ. Code § 3439.04(a)(2) or §

18  3439.05 is subject to a four-year statute of limitations from the time the transfer was made or the

19  obligation was incurred. Id.

20      In this case, the transfer took place on April 21, 2003. The Trustee filed the complaint on

21  March 17, 2006, which was well within four years of the transfer. Therefore, both the § 546

22  statute of limitations and state statute of limitations are met, and the Trustee has standing to bring

23  this complaint.

24  .

25                          DISCUSSION

26  I.    Admissibility issues

27      Neither the Debtor nor the Defendant were present at trial, despite having had three

28  months' notice of trial pursuant to the court's August 2, 2007 Notice of and Order for Trial. At

1   trial, the attorney for the Debtor and the Defendant stated that he had informed them both of the

2   trial date and expected both to appear for trial.  The Plaintiff made an offer of proof, which the

3   court accepted, that a process server unsuccessfully attempted to serve subpoenas upon the

4   Debtor and the Defendant three times at the Residence.  Counsel for both parties stated that they

5   wished to proceed with the trial, even without the Debtor and the Defendant present.  At trial, the

6   court admitted portions of the Debtor's testimony at her deposition and at the § 341(a) meeting of

7   creditors into evidence, despite counsel for the Debtor and Defendant objecting on hearsay

8   grounds.  The court also admitted portions of the Defendant's deposition testimony.  In addition,

9   the court admitted the Defendant's bank statements.

10

11          A.      Admissibility of the Debtor's deposition transcript and § 341 transcript

12          Hearsay is "a statement, other than one made by the declarant while testifying at the trial

13   or hearing, offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).

14   If objected to, the hearsay is inadmissible under Federal Rule of Evidence 802 unless it meets an

15   exception to the hearsay rule.  See FED. R. EVID. 802.

16          At trial, the Plaintiff argued that the Debtor was an unavailable witness and therefore,

17   Federal Rule of Evidence 804 applied.  Federal Rule of Evidence 804 defines "unavailability"

18   and provides that certain statements are not excluded by the hearsay rule if the declarant is

19   unavailable as a witness.  See FED. R. EVID. 804.  Of relevance here is Federal Rule of Evidence

20   804(a)(5), which states that a declarant is unavailable as a witness if he or she is absent from the

21   hearing, and the proponent of a statement has been unable to procure the declarant's attendance

22   by process or other reasonable means.  FED. R. EVID. 804(a)(5).

23          The court is satisfied that under the circumstances, the Plaintiff - as the proponent of the

24   Debtor's statements in the deposition transcript and the § 341 transcript - was unable to procure

25   the Debtor-declarant's attendance by process or other reasonable means.  The Plaintiff employed

26   a registered California process server, who attempted to serve the subpoena three different days

27   at a reasonable location - the Debtor's Residence.  Therefore, the court concludes that the Debtor

28   is an unavailable declarant within the meaning of Federal Rule of Evidence 804(a)(5).  If the

9

declarant is deemed unavailable, Federal Rule of Evidence 804(b) allows, as an exception to the hearsay rule, certain statements that would otherwise constitute hearsay.  Here, Federal Rule of Evidence 804(b)(1) is the applicable hearsay exception, and it states that former testimony by the now-unavailable declarant is admissible in spite of the hearsay rule.  Former testimony is defined as "[t]estimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  FED. R. EVID. 804(b)(1).

From this definition of "former testimony," it is clear that the Debtor's deposition testimony is admissible under the former testimony exception to the hearsay rule.  The Debtor's deposition was taken in connection with the present litigation and in the course of the same adversary proceeding.  The deposition was taken for the purpose of the Plaintiff's discovery for the present case.  The party against whom the testimony is now offered - the Defendant - had an opportunity and similar motive to develop the testimony because both parties shared an attorney, who was present at the deposition and was entitled to develop the Debtor's testimony by cross examination.

But by the same token, from this definition of "former testimony" it is also clear that the § 341 Transcript (Exhibit 18) cannot be admitted as the Debtor's former testimony.  Although the Debtor was examined under oath at the § 341 meeting, the party against whom the testimony is now offered - the Defendant - did not have an actual opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.  That being said, the transcript is still admissible under the residual hearsay exception, Federal Rule of Evidence 807.

Federal Rule of Evidence 807 provides that a statement not specifically covered by Federal Rule of Evidence 803 or 804 but having equivalent circumstantial guarantees of trustworthiness is not excluded by the hearsay rule if the court makes three determinations:  (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through

10

1   reasonable efforts; and (C) the general purposes of these rules and the interests of justice will

2   best be served by admission of the statement into evidence. FED. R. EVID. 807.

3          In this case, the statements in the § 341 Transcript have equivalent circumstantial

4   guarantees of trustworthiness as other hearsay excepted from the hearsay rule in Federal Rules of

5   Evidence 803 and 804 because they were made under oath. The statements in the § 341

6   Transcript are offered as evidence of a material fact – that these are the statements the Debtor

7   made at the § 341 meeting to the Trustee regarding her bankruptcy filing. The statements therein

8   are more probative on the point for which it is offered than any other evidence which the

9   proponent can procure through reasonable efforts because the Debtor did not appear to testify at

10  trial. Finally, the general purposes of these rules and the interests of justice will best be served

11  by admission of the statements into evidence. The Debtor and the Defendant's interests are and

12  were closely aligned at the time of the § 341 meeting. The transfer of the one-half interest from

13  the Debtor to the Defendant was already completed by the time of the § 341 meeting. At the time

14  of the § 341 meeting, the Debtor wanted the Defendant to have, and the Defendant undoubtedly

15  wanted to keep, the transferred one-half interest in the Residence. Additionally, the interests of

16  justice will best be served by the admission of the statements contained in the § 341 meeting

17  Transcript into evidence because the Debtor did not appear at trial, and there is no suggestion that

18  the statements in the § 341 meeting transcript are false or inherently unreliable. In fact, the

19  purpose of a § 341 meeting is to enable creditors and the trustee to uncover all of the debtor's

20  assets by obtaining full and truthful information directly from the debtor. See 5 FEDERAL

21  PROCEDURE § 9:701 (L. ed. 2007). For those reasons, the § 341 Transcript was properly

22  admitted as Exhibit 18 under Federal Rule of Evidence 807.

23

24          B.      Admissibility of the Defendant's deposition transcript

25          The statements in the Defendant's deposition transcript do not constitute hearsay and are

26  freely admissible under the circumstances. Federal Rule of Civil Procedure 32(a) provides, in

27  pertinent part, that a deposition may be used against an adverse party to the extent the use would

28  be admissible under the Federal Rules of Evidence. FED. R. CIV. PROC. 32(a). The statements

1 │ within the Defendant's deposition transcript are admissions by a party-opponent, which is

2 │ specifically excluded from the Federal Rules of Evidence's definition of hearsay. See FED. R.

3 │ EVID. 801(d)(2). A statement is a non-hearsay admission by a party-opponent if it is offered

4 │ against a party and is the party's own statement. FED. R. EVID. 801(d)(2)(A). Therefore, the

5 │ portions of the Defendant's deposition transcript read into the record are admissible.

7 │ C.    Admissibility of the Defendant's bank statements

8 │ This court admitted into evidence the Defendant's bank statements, over the hearsay

9 │ objection of the Defendant's attorney. The bank statements were produced by the Defendant in

10 │ response to the court's order granting the Plaintiff's motion to compel production of documents,

11 │ dated July 2, 2007. The court ordered the Defendant to produce all monthly bank statements

12 │ from her bank account from 1997 to the present date. The Defendant complied, and the bank

13 │ statements were introduced as Exhibits 4 through 11 at trial.

14 │ The court concludes that the admission of the bank statements into evidence over the

15 │ hearsay objection of the Defendant's attorney was proper under Federal Rule of Evidence 807.

16 │ The bank statements at issue here are offered as evidence of a material fact - the

17 │ Defendant's bank account transactions. The statements are more probative on the point for

18 │ which they are offered than any other evidence which the proponent can procure through

19 │ reasonable efforts because they show all of the Defendant's transactions for a period of

20 │ approximately 10 years (since 1997). Finally, the general purposes of these rules and the

21 │ interests of justice will best be served by admission of the Defendant's bank statements into

22 │ evidence because they were produced in response to a court order, and thus puts teeth into the

23 │ court order's compelling the production of these documents. The requirements of Federal Rule

24 │ of Evidence 807(A) through (C) are met.

25 │ Whether the bank statements have equivalent circumstantial guarantees of trustworthiness

26 │ as other exceptions to the hearsay rule is another question. The bank statements at issue here

27 │ were not admitted under the business records exception to the hearsay rule, Federal Rule of

28 │ Evidence 803(6), because there was no foundation testimony to establish that the bank statements

12

1    were Bank of America's business records.  However, courts have long recognized that bank

2    statements may be admitted under the residual exception to hearsay because "bank documents,

3    like other business records, provide circumstantial guarantees of trustworthiness because the

4    banks and their customers rely on their accuracy in the course of their business." <u>United States v.</u>

5    <u>Pelullo</u>, 964 F.2d 193, 202 (3d Cir. 1992).  In <u>Karme v. Comm'r of Internal Revenue</u>, 673 F.2d

6    1062 (9th Cir. 1982), the Ninth Circuit Court of Appeals found that it was appropriate to admit

7    bank statements into evidence as an exception to the hearsay rule "[g]iven the circumstantial

8    guarantees of trustworthiness . . ., the distant location of the bank, and the lack of any evidence in

9    the record to suggest that the bank records are anything other than what they purport to be."

10   <u>Karme v. Comm'r of Internal Revenue</u>, 673 F.2d at 1065.

11       The above-cited cases speak of admitting bank statements that do not qualify as business

12   records under Federal Rule of Evidence 803(24) instead.  Federal Rule of Evidence 803(24) is no

13   longer in existence; it is now found in current Federal Rule of Evidence 807.  In 1997, the

14   Federal Rules of Evidence were amended to combine Federal Rule of Evidence 803(24) with

15   Federal Rule of Evidence 804(b)(5) and transfer both to new Rule 807.  173 A.L.R. FED. 1.  No

16   change in meaning was intended.  <u>Id.</u>  Therefore, it is appropriate for this court to rely here upon

17   cases basing its decision to admit bank statements under Federal Rule of Evidence 803(24)

18   because that section is now found in Federal Rule of Evidence 807.

19       Both former Federal Rule of Evidence 803(24) and current Federal Rule of Evidence 807

20   are subject to the following proviso:

21           However, a statement may not be admitted under this exception
             unless the proponent of it makes known to the adverse party
22           sufficiently in advance of trial or hearing to provide the adverse
             party with a fair opportunity to prepare to meet it, the proponent's
23           intention to offer the statement and the particulars of it, including
             the name and address of the declarant.
24

25   <u>See</u> FED. R. EVID. 807.

26       This is a requirement that the proponent of the hearsay make known to the adverse party

27   that he or she intends to introduce the hearsay.  Here, the Defendant was put on notice that the

28   documents would be introduced because the Plaintiff compelled the production of these bank

13

1  statements from her.  Additionally, they were listed on the exhibits list prepared by the Plaintiff

2  and served on the Defendant prior to trial.  The court is satisfied that the Defendant's bank

3  statements were properly admitted under Federal Rule of Evidence 807.

4

5  II.    California Uniform Fraudulent Transfer Act

6         The Plaintiff asserts two claims for relief in his complaint, both brought under the

7  California Uniform Fraudulent Transfer Act.  The first claim for relief is brought under

8  California Civil Code § 3439.05, which provides that a transfer during or resulting in insolvency

9  constitutes a fraudulent transfer as to a creditor whose claim arose before the transfer, if the

10 debtor made the transfer without receiving a reasonably equivalent value in exchange.  CAL. CIV.

11 CODE § 3439.05.  The second claim for relief is brought under California Civil Code § 3439.04,

12 which provides that a transfer is fraudulent as to a creditor regardless of when the creditor's

13 claim arose, if the debtor made the transfer with the actual intent to hinder, delay, or defraud any

14 creditor and without receiving a reasonably equivalent value in exchange.  CAL. CIV. CODE §

15 3439.04.  These are wholly and exclusively state law claims.  As the Ninth Circuit Bankruptcy

16 Appellate Panel noted, "Whether a transfer is avoidable under California's UFTA is a question

17 purely of California law as to which the California Supreme Court is the final authority.  Thus, a

18 federal court construing UFTA is merely predicting what the state supreme court would rule if

19 presented with the question."  In re Beverly, 374 B.R. at 232 (citing Comm'r of Internal Revenue

20 v. Estate of Bosch, 387 U.S. 456, 465 (1967)).

21        The court will discuss each of the Plaintiff's claims for relief in turn, in the order that they

22 are pled.

23

24        A.     Fraudulent transfer under Cal. Civ. Code § 3439.05

25        California Civil Code § 3439.05 provides that a transfer during or resulting in insolvency

26 constitutes a fraudulent transfer if the transfer was for less than reasonably equivalent value.

27 CAL. CIV. CODE § 3439.05.  The transfer is fraudulent as to a creditor whose claim arose before

28 the transfer was made.  Id.

14

1    "Insolvency" is defined in Cal. Civ. Code § 3439.02. In relevant part, § 3439.02 states

2    that a debtor is insolvent if, at fair valuation, the sum of the debtor's debts is greater than all the

3    debtor's assets. CAL. CIV. CODE § 3439.02(a). Alternatively, a debtor who is generally not

4    paying his or her debts as they become due is presumed to be insolvent. CAL. CIV. CODE §

5    3439.02(c).

6    The burden of proving insolvency is on the creditors. See e.g., Neumeyer v. Crown

7    Funding Corp., 56 Cal. App. 3d 178, 186 (Cal. Ct. App. 1976); Stearns v. Los Angeles City

8    School Dist., 244 Cal. App. 2d 696, 737 (Cal. Ct. App. 1966). Here, the burden of proving

9    insolvency is on the Plaintiff in his capacity as the chapter 7 trustee, exercising his § 544(b)

10   powers. As a general rule, solvency and not insolvency is presumed. Neumeyer, 56 Cal. App. 3d

11   at 186. "To overcome the presumption of solvency, there must be some basis in evidence for

12   determining that the amount of the debtor's obligations exceeded the then present fair salable

13   value of his nonexempt assets." Id. In an action to establish a fraudulent transfer, the

14   plaintiff-creditor has the burden of proving fraud by a preponderance of the evidence.

15   Whitehouse v. Six Corp., 40 Cal. App. 4th 527, 604 (Cal. Ct. App. 1995).

16   There appears to be no dispute that the Debtor's transfer of the one-half interest in the

17   Residence to the Defendant was for less than reasonably equivalent value. The parties stipulated

18   that the value of the house at the time of the transfer was approximately $300,000.00. Thus, the

19   Debtor transferred an interest that was worth $150,000.00. At her deposition, the Defendant

20   testified that she did not pay any portion of the down payment for the property. See Mishelleena

21   Mendez Deposition at 13:10 - 13:13. The Defendant testified that no percentage ownership

22   interest in the Residence was ever discussed, and the Defendant did not know what percentage

23   ownership interest she was entitled to by virtue of her monthly payments at the time the

24   Residence was purchased. See Mishelleena Mendez Deposition at 17:9 - 17:24. The court finds

25   that the transfer from the Debtor to the Defendant of the one-half interest in the Residence was

26   for less than reasonably equivalent value because the interest was worth $150,000.00, and the

27   Defendant did not pay anything at the time of the transfer.

28   The question, then, becomes whether the Debtor was insolvent at the time of the transfer

15

1  or was rendered insolvent as a result of the transfer.  The Debtor's sworn bankruptcy petition and

2  schedules of assets and liabilities were admitted into evidence as Exhibit 17.  At trial, the

3  Plaintiff testified that he relied on the Debtor's assets, income, and expenses as listed on the

4  schedules to her bankruptcy petition in determining her insolvency.  The Plaintiff also testified

5  that he considered the fact that the Debtor did not have any other sources of income aside from

6  money for foster children care, and that the Debtor did not file tax returns because she was not

7  required to file them.  Also, according to the Plaintiff, if the Debtor sold her assets or transferred

8  assets at a gain, it would have shown up in her tax returns.  Additionally, the Plaintiff testified

9  that he looked at Schedule F and considered the amounts due and the date when the claims arose.

10  According to Schedule F, many of the debts listed precede 2003.

11         The court concludes the Plaintiff has failed to meet his burden of proof that the Debtor

12  was "insolvent" under Cal. Civ. Code § 3439.02(a).  From the evidence, the court is not

13  persuaded that the sum of the Debtor's debts on the date of the transfer was greater than the sum

14  of all of the Debtor's assets.  It is clear from the Plaintiff's testimony that the Plaintiff relied

15  almost exclusively on the information in the Debtor's bankruptcy petition, which was filed on

16  October 17, 2005 - 2 ½ years after the April 21, 2003 transfer date.  The Plaintiff has not met his

17  burden of proof by relying upon schedules filed 2 ½ years after the date of the transfer to recreate

18  the Debtor's financial condition on the date of the transfer.  In Annis v. First State Bank of Joplin

19  (Matter of Annis), 78 B.R. 962, 967 (Bankr. W.D. Mo. 1987), the bankruptcy court for the

20  Western District of Missouri stated, although in dicta, that schedules filed six months after the

21  purportedly fraudulent transfer were insufficient, without more, to demonstrate insolvency as of

22  the date of the transfer under the Bankruptcy Code's fraudulent transfer provision.  It observed

23  that during the six-month period between the transfer and the filing of the bankruptcy petition,

24  "the debtors may have had a dwindling of their cash deposits or of other assets that may have had

25  to be expended for living or other expenses.  And, at least some of the debt is shown to have been

26  incurred since the date of the [transfer]."  Matter of Annis, 78 B.R. at 967.  Similarly, in Miller v.

27  Keegan, 92 Cal. App. 846 (Cal. Ct. App. 1949), the California Court of Appeal found that the

28  debtor-defendant's inability to pay a judgment against him in 1946 "has no legitimate tendency

1  to prove insolvency" two years prior. <u>Miller v. Keegan</u>, 92 Cal. App. at 852. Both decisions are

2  persuasive.

3        Additionally, the Plaintiff did not articulate at trial what the Debtor's assets and liabilities

4  were prior to the transfer and immediately after the transfer. The Plaintiff stated at trial that he

5  assumed that the debtor owned her house, her car, and the other assets listed in her bankruptcy

6  petition. But it is worth noting that the Debtor's bankruptcy petition does not list a car. In fact, it

7  did not even list one item of personal property. The Plaintiff's assumptions are insufficient to

8  meet his burden of proof that the Debtor was insolvent at the time of the transfer or was rendered

9  insolvent as a result thereof. Other cases that have dealt with fraudulent transfers compare the

10  debtor's assets and liabilities prior to the transfer with the debtor's assets and liabilities after the

11  transfer. <u>See e.g.</u>, <u>In re Beverly</u>, 374 B.R. at 238 (before the transfer, the debtor's assets included

12  $500,000 in nonexempt bank deposits and his debts included the $424,450 judgment. After the

13  transfer, his only UFTA assets were of nominal value, but his debts remained the same); <u>Kendall</u>

14  <u>v. Carbaat</u> (<u>In re Carbaat</u>), 357 B.R. 553, 562 (Bankr. N.D. Cal. 2006) (the Trustee contended

15  that as a result of the transfers, the debtor was left with only three vehicles, the unencumbered

16  value of which totaled $3,500. The evidence established that, at the time of the transfers and

17  thereafter, the debtor had unsecured debt on three credit cards totaling over $17,000. Therefore,

18  even if the debtor was not insolvent at the time of the transfers, he was rendered insolvent as a

19  result of the transfers). No such comparison is possible here because the Plaintiff has been

20  unable to provide a snapshot of the Debtor's financial condition on the date of the transfer.

21        The alternate definition of "insolvency" as provided in Cal. Civ. Code § 3439.02(c) states

22  that a debtor who is generally not paying his or her debts as they become due is presumed to be

23  insolvent. The phrase "unable to pay debts as they become due" requires more than mere

24  statements of indebtedness. <u>Miller</u>, 92 Cal. App. at 852. The Plaintiff's only evidence about the

25  Debtor's inability to pay debts as they became due was by looking at Schedule F and noting that

26  many of the debts listed in Schedule F showed that they were incurred prior to 2003. However,

27  the attorney for the Debtor and the Defendant raised several questions, including the collectibility

28  of those debts under California law and the extent to which the Debtor's husband was liable for

1  those debts. The Plaintiff admitted that he had not considered those issues in making his

2  determination of insolvency, although he assumed that community debts are joint and several

3  liability.

4      In fact, the Debtor specifically denied that she had any delinquent debts or judgements

5  against her in about April 2003. See Elizabeth Mendez deposition at 24:17 - 24:25. The Debtor

6  also denied having any outstanding tax liens against her. See Elizabeth Mendez deposition at

7  25:1 - 25:3. The Debtor testified at her deposition that she was having trouble repaying her debts

8  either in 2004 or 2005 – "approximately about two or three years ago because it's 2007." See

9  Elizabeth Mendez deposition at 28:15 - 28:23. The Debtor admitted that she was liable on

10  community property debt that dated back to approximately 1998 or 1999, but that she had not

11  paid them because she had an agreement with her husband that he was supposed to pay them.

12  See Elizabeth Mendez deposition at 30:21 - 30:24; 32:12 - 32:23.

13      The Plaintiff has not proved, by a preponderance of the evidence, that the Debtor was

14  either insolvent on the date of the transfer, April 21, 2003, or was rendered insolvent as a result

15  of the transfer.

16

17      B.      Fraudulent transfer under Cal. Civ. Code § 3439.04

18      Cal. Civ. Code § 3439.04 provides two alternative ways of finding a fraudulent transfer.

19  Cal. Civ. Code § 3439.04(a)(1) provides that transfers made with actual intent to delay, hinder, or

20  defraud creditors are fraudulent and therefore voidable. CAL. CIV. CODE § 3439.04(a)(1). This is

21  the actual fraud section of Cal. Civ. Code § 3439.04(a). CAL. CIV. CODE § 3439.04(b) lists 11

22  "badges of fraud" that may help determine whether such actual fraud exists. See CAL. CIV. CODE

23  § 3439.04(b). The other way to find a fraudulent transfer under Cal. Civ. Code § 3439.04(a) is

24  by constructive fraud, as provided in Cal. Civ. Code § 3439.04(a)(2). CAL. CIV. CODE §

25  3439.04(a)(2). Cal. Civ. Code § 3439.04(a)(2) states that a transfer is fraudulent if made without

26  receiving reasonably equivalent value in exchange, and the debtor intended to incur, or believed

27  or reasonably should have believed, that he or she would incur debts beyond his or her ability to

28  pay as they become due. CAL. CIV. CODE § 3439.04(a)(2).

18

Whether there is actual intent to hinder, delay, or defraud under Cal. Civ. Code § 3439.04(a) is a question of fact to be determined by a preponderance of the evidence. In re Beverly, 374 B.R. at 235 (citing Bulmash v. Davis, 24 Cal. 3d 691 (Cal. 1979); Filip v. Bucurenciu, 129 Cal. App. 4th 825 (Cal. Ct. App. 2005); Annod Corp. v. Hamilton & Samuels, 100 Cal. App. 4th 1286 (Cal. Ct. App. 2002)).

The Trustee has not met his burden of proof that there was any actual intent by the Debtor to hinder, delay, or defraud her creditors. The Debtor stated at her deposition that she transferred the one-half interest in the Residence to the Defendant to ensure that the Defendant, who is disabled, would always have a place to live if something happened to the Debtor. See Elizabeth Mendez Deposition at 23:15 - 23: 25 ("If anything was to happen to me, . . . make sure that [the Defendant] would never be – you know, be out in the street or be homeless or something. . . [I]f something bad, like these city officials or county officials what they do when somebody passes away or dies of an accident, that my daughter being [on the deed], you know, that protects her – her home forever so that's a document that makes sure that she has that.")

Therefore, even if the Plaintiff could prove by a preponderance of the evidence that the Debtor transferred her one-half interest in an attempt to prevent creditors from taking the property, thereby shifting the burden of proof to the Defendant, the Defendant has successfully rebutted the presumption of actual fraud, by showing other reasons for the transfer.

The Plaintiff asserts that the transfer by the Debtor was done with actual intent to hinder, delay, or defraud creditors because of the existence of at least five of the "badges of fraud" listed in Cal. Civ. Code § 3439.04(b). The Plaintiff claims that the transfer was to an insider (Cal. Civ. Code § 3439.04(b)(1)); the Debtor retained possession of the property after the transfer (Cal. Civ. Code § 3439.04(b)(2)); the transfer was of substantially all of the Debtor's assets (Cal. Civ. Code § 3439.04(b)(5)); the value of the consideration received was not reasonably equivalent to that of the asset transferred (Cal. Civ. Code § 3439.04(b)(8)); and the Debtor was insolvent or became insolvent as a result of the transfer (Cal. Civ. Code § 3439.04(b)(9)).

The 11 "badges of fraud" were not codified in California's UFTA until 2005. The "badges of fraud" listed in Cal. Civ. Code § 3439.04(b)(1) through Cal. Civ. Code §

19

3439.04(b)(11) are meant only as helpful indicators of circumstantial fraud. "Since direct evidence of intent to hinder, delay or defraud is uncommon, the determination [of whether there is actual intent to hinder, delay, or defraud under UFTA] typically is made inferentially from circumstances consistent with the requisite intent." In re Beverly, 374 B.R. at 235. And as the California Court of Appeals noted:

> These factors do not create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other.

Filip, 129 Cal. App. 4th at 834.

The court first and foremost finds that of the five "badges of fraud" that Plaintiff cites as being present here, only three of them are actually present: The transfer was to an insider, the Debtor retained possession after the transfer, and the transfer was for less than reasonably equivalent value. The court finds that the Plaintiff has not provided sufficient evidence that the transfer was of substantially all of the Debtor's assets and that the Debtor was insolvent or became insolvent as a result of the transfer. As the court has articulated earlier, the Plaintiff has not satisfactorily testified as to what assets the Debtor had at the time of the transfer, such that the court is not persuaded that the transfer was of substantially all of the Debtor's assets. In addition, there is a question as to whether the Debtor was in fact insolvent on the date of the transfer, or was rendered insolvent as a result of the transfer, given that the Plaintiff relied on a bankruptcy petition filed 2 ½ years after the transfer to make his determination of insolvency.

With regard to the other three "badges of fraud" that the Plaintiff argues apply in this case, the cumulative effect of them is insufficient to find actual fraud. The purpose of the "badges of fraud" is to assist the court in ascertaining whether there was actual intent to defraud, and not to mandate a specific result. The court is not persuaded that under the circumstances, the three badges of fraud constitute actual fraud to hinder, delay, or defraud creditors. The Debtor transferred a one-half interest in the Residence to her disabled daughter 2 ½ years before filing for bankruptcy. The Plaintiff has not met his burden of showing actual intent to defraud by a preponderance of the evidence.

20

Finally, there is no evidence that Cal. Civ. Code § 3439.04(a)(2) applies here to support the Plaintiff's fraudulent transfer claim. The Plaintiff has provided no evidence that the Debtor intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due.

CONCLUSION

For the foregoing reasons, the court finds in favor of the Defendant. Counsel for the Defendant shall submit a proposed form of judgment consistent herewith.

DATED:   February 29, 2008.

WHITNEY RIMEL, Judge
United States Bankruptcy Court

21

1                                PROOF OF SERVICE BY MAIL

2   STATE OF CALIFORNIA   )

                              ) ss.

3   COUNTY OF FRESNO      )

4        I am a citizen of the United States and a resident of the county aforesaid; I am over the

5 age of eighteen years and not a party to the within above-entitled action; my business address is

6 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721.  On February 29, 2008, I served

7 the within document on the interested parties in said action by placing a true copy thereof

8 enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at

9 Fresno, California, addressed as follows:

10 Beth Maxwell Stratton, Esq.
    7415 N. Palm Ave., #101
11 Fresno, CA 93711

12 Richard A. Lima, Esq.
    443 E. Shields Ave., #14
13 Fresno, CA 93704

14 Office of the United States Trustee
    2500 Tulare Street
15 Suite 1401
    Fresno, California 93721
16

17        I certify (or declare), under penalty of perjury, that the foregoing is true and correct.

18 Executed on February 28, 2008, at Fresno, California.

19

20                               Kathy Torres, PLS

21

22

23

24

25

26

27

28